### 278.  LYNDON v. GEORGIA RAILWAY & ELECTRIC CO.

1. The Supreme Court having ruled that the assignments of error are sufficiently specific to give this court jurisdiction of the writ of error (129 Ga. 353, 58 S. E. 1047), the motion to dismiss is overruled.

2. The refusal of the trial court to allow the proffered amendment to the plaintiff's petition cut off a part of the case which he had a right to set out in his petition. It debarred him from relying upon a ground of recovery, by preventing him "from placing before the jury at all a substantial allegation of duty violated, constituting negligence, on the basis of which a recovery was claimed."

3. Whether a common carrier, in not providing a seat for each and every passenger, has fulfilled its legal duty of extraordinary diligence toward the passenger is a question of fact for the jury; and in a case where an injury results to a passenger, or is partly caused, by failure to provide a seat, the fact that for a long period of time sufficient seats had not been provided, and the further fact that this was known to the defendant company, may be pleaded and proved as a circumstance of substantive negligence, as well as aggravation.

Action for damages, from city court of Atlanta—Judge Reid. October 22, 1906.

Argued. April 9,—Decided November 11, 1907.

Rehearing denied January 29, 1908.

The petition alleged: The defendant, the Georgia Railway and Electric Company, is a street-railway corporation, operating a line of street-railway in the city of Atlanta. Defendant has damaged petitioner in the sum of $1,000, by reason of the following facts: On May 18, 1904, about 6.30 o'clock p. m., petitioner, while riding as a passenger on one of defendant's cars going west on Marietta street, was injured by the negligence of defendant as hereinafter shown. The car which petitioner boarded was so crowded that all of its seats were occupied, and petitioner found it necessary to stand up in the aisle of the car and hold on with one hand to the back of the seat, to steady himself. His position was in full view of the conductor and was well known to the conductor, and the conductor saw him while occupying this position, which is usual and customary on the cars of the defendant when all the seats are occupied. The car stopped at Simpson street for the purpose of taking on or letting off passengers, and then started forward, continuing its way out Marietta street. After it had started and while it was running slowly, it gave a sudden, violent, negligent, and careless jerk forward, and petitioner was thrown to the floor and seriously and permanently injured. Petitioner was injured through the negligence of defendant, which consisted in jerking said car suddenly, violently, negligently, and carelessly. —The petition set out the nature of the injuries, and alleged that the plaintiff could not have avoided the same by the exercise of ordinary care.

An amendment filed by the plaintiff states that he "sets forth the following as an additional ground of negligence and as an aggravating circumstance in the act of the defendant by which petitioner was injured: (1) Petitioner shows that the defendant is a street-railroad company and is a carrier, for hire, of passengers in the city of Atlanta, and owns the franchise for operating street-cars along Marietta street, in said city; that for several years past (since January 28, 1902) it has been operating street-cars under said franchise on said street, and has constructed double tracks along said street for the operation of its cars. (2) Petitioner shows that the Marietta street line is one of the principal lines of travel in said city and is traveled by great numbers

of people every day in riding to and away from their places of work and business, and is a source of large income to the defendant company; that the number of passengers on said line is always at its greatest during the morning hours when the outlying population of the city is traveling in towards the center and in the early evening hours when said population is traveling homeward; that this condition is a matter of general knowledge, and was especially well known to the defendant company, and had been well known to it for several years, since its organization on January 28, 1902. (3) Petitioner shows that despite the above-recited facts, the defendant had, at the time of the injury to the plaintiff and ever since its organization as a railroad company, wholly failed and neglected to equip said Marietta-street line with safe and adequate accommodations, had failed to equip said line with a sufficient number of cars to carry the travel offering on said line at the hours of heavy travel, and had been compelling a large proportion of the people traveling on said line at the hours of heavy travel to ride standing up and in densely crowded and dangerous positions; that although, at the time said injury occurred, the defendant was fully aware of its inadequate equipment, it had failed and persistently refused to increase the same to meet the demands of its usual traffic, and was daily and continually compelling the public—negroes and white men and women—to ride standing up and packed together in the cars in dangerous positions, all of which, petitioner alleges, was gross and wilful negligence on the part of the defendant, was done for the purpose of saving money and increasing the company's profits and the dividends of its stockholders and bondholders, and was a conscious and deliberate violation of its duty to petitioner and the traveling public. Not only on said Marietta-street line was there a failure to provide adequate and proper accommodations for its patrons, but also on all the principal lines of its system in the city of Atlanta. (4) Petitioner shows that at the hour he boarded the car in question, to wit, at 6.30 p. m. on May 18, 1904, the same was in so crowded a condition that every seat was occupied and a large number of people, including himself, had to ride standing up in crowded and dangerous positions. (5) Petitioner, on account of the fact that he was standing up, was unable to meet and resist the jerk of the car described, and was thereby thrown violently

backward to the floor.   In his fall the instep of his right foot was
caught under the iron support of the seat; and the weight of his
entire body being thus thrown upon his instep, the same was vio-
lently torn and sprained.   (6) Petitioner shows that if the de-
fendant company had properly discharged its duty and provided
sufficient cars to carry the usual evening travel, petitioner would
not have been injured as alleged; that the crowded condition of
the car, which was the result of the defendant's aforesaid neglect,
compelled petitioner to stand up, and the fact that he was stand-
ing disabled him from resisting the jerking and bumping of the
car and caused the fall that injured him.   If petitioner had not
been compelled to ride standing, he would not have been thrown
by the jerk and would not have been injured.   (7) Petitioner
shows that he is a practising surgeon in the city of Atlanta, and,
at the time referred to, was on his way to respond to a call of a
patient, and for this reason he was obliged to take the first car
that came by, and could not wait.   Prior to the injury petitioner
had paid his fare.   (8) Petitioner alleges that the continued, de-
liberate, and conscious neglect of the defendant company to equip
its lines with adequate and sufficient cars to carry the public in
safety constitutes an aggravating circumstance in the act by which
petitioner was injured; and he amends paragraph 2 by substitut-
ing for $1,000 the sum of $5,000; for which he prays judgment
as actual and punitive damages."

To this amendment the defendant demurred as follows: To
paragraphs 2 and 3, because they seek to set out irrelevant and
immaterial matter, and because the matter therein set out is not
the proximate cause of any injury for which the plaintiff sues.
To "that part of paragraph 4 which alleges 'in crowded and dan-
gerous positions;' because the same is a mere conclusion of the
pleader."   To that part of paragraph 6 which alleges, "Petitioner
shows that if the defendant company had properly discharged its
duty and provided sufficient cars to carry the usual evening travel,
petitioner would not have been injured as alleged;" because this
refers to the irrelevant and immaterial part of the amendment as
set out in paragraphs 2 and 3; and because it is irrelevant and im-
material, and is not the proximate cause of any injury for which
plaintiff sues.   To "that part of paragraph 6 which follows the
allegation, 'the crowded condition of the car,' to wit, 'which was

the result of the defendant's aforesaid neglect;'" for the reasons stated in the preceding ground. To paragraph 2, for the same reasons, and because the plaintiff is not entitled to recover punitive damages, on the facts set out in the original petition and in the amendment. The court sustained the demurrer.

The plaintiff then presented an amendment which, on objection of the defendant, the court declined to allow. This proposed amendment was as follows: "(1) Petitioner shows that he is a surgeon practising his profession in the city of Atlanta, and, on the evening when he suffered the injury aforesaid, had received a telephone message calling him to attend a patient living far out in the northwestern portion of the city, and was, at the time, on his way to respond to said call. The Marietta street car line was the quickest and most direct route to reach the home of said patient. (2) Petitioner shows that when he boarded the car in question at the corner of Marietta and Broad streets, he was admitted and received into the car by the conductor in charge of the same, and said conductor collected from him the usual fare, —5 cents. (3) Petitioner shows that said conductor nevertheless wholly failed and neglected to assign petitioner to a seat in said car, and petitioner was not provided with a seat. (4) Petitioner further shows that said conductor wholly failed and neglected to furnish him equal accommodations with other passengers, in that many of said passengers were provided with seats while petitioner, although he had paid his fare, was compelled to stand up in the aisle of the car, holding on to the backs of benches for support. The car was of the type having an aisle down the center from the front to the rear, with seats on the sides, each seat holding two passengers. (5) Petitioner shows that a passenger seated is in a safer position than a passenger standing up, and is better enabled to resist the jerking of the car, and is not as liable to be injured by such jerking. (6) The jerk by which petitioner was injured was of violence sufficient to throw petitioner from his standing position in the aisle of the car, but was not of sufficient violence to have thrown or injured him had he been seated. (7) Petitioner shows that the act by which he was injured was attended with aggravating circumstances, in that it was a result of a long-continued practice on the part of the defendant company, adopted and pursued by it in wilful and reckless disregard of the

rights of the plaintiff and of the public generally, the practice referred to being the continued overcrowding of its cars, in conscious and deliberate neglect of the duties imposed upon it by the law as contained in sections 2268 and 2270 of the present code."
(8, 9) Paragraphs 8 and 9 of this amendment contained in substance and with amplification the matter contained in paragraphs 2 and 3 of the first amendment. Paragraph 10 was as follows: "Petitioner alleges that the continued, deliberate, and conscious failure of the defendant company to furnish its patrons with equal accommodations and to assign them to seats constitutes an aggravating circumstance in the act by which petitioner was injured, and he amends paragraph 2 of the original petition by substituting for $1,000 the sum of $5,000, for which he prays judgment as actual and punitive damages." A separate amendment, substituting $5,000 for $1,000, as damages, was allowed.

The bill of exceptions assigns as error the judgment sustaining the demurrer to the first amendment and the refusal to allow the second amendment; and proceeds as follows: "After said rulings the case went to trial regularly on its merits, with submission of evidence and charge of the court, and a verdict was rendered for the defendant and judgment entered thereon. Having refused to allow the petition to be amended as above recited, and such rulings being controlling, as plaintiff in error contends, in the result of the case, the court erred in permitting said verdict to be rendered and said judgment to be entered. To the action of the court in permitting said verdict to be rendered and said judgment to be entered, the plaintiff in error excepted, now excepts and assigns the same as error, upon the ground that the same was contrary to law, and that the court having refused to let the petition be amended, and such refusal, as plaintiff in error contends, being controlling in effect, the said verdict and judgment could not be a legal termination of the case." There was a motion to dismiss the writ of error, on the following grounds: (1) The judgment excepted to was not a final one, and was not a judgment affecting the final result of the case. (2) No proper exception was taken to the verdict and judgment finally disposing of said case. (3) The final determination of said case is not now brought to this court for review. (4) The only errors complained of and brought to this court for review are exceptions to the ruling

made pendente lite." Questions raised by the motion to dismiss were certified by the Court of Appeals to the Supreme Court, for instruction, and are set out, with the instructions of the Supreme Court thereon, in 129 *Ga.* 353.

*Henry A. Alexander,* for plaintiff, cited, on the motion to dismiss the writ of error: *Ga. R.* 108/379; 112/884, 894; 117/335; 118/913; 119/395, and asked that *Henderson* v. *State,* 123 *Ga.* 739, and *Hendricks* v. *Reid,* 125 *Ga.* 775, and cases followed therein, be reviewed. He cited, on amendment: 120 *Ga.* 785, and cit.; 123 *Ga.* 28, and cit. Failure to furnish passengers with seats: 2 A. & E. Enc. L. (1st ed.) 765; 5 A. & E. Enc. L. (2d ed.) 590; 6 Cyc. 582; Hutch. Car. §515 D, p. 604; 2 Rorer on Railroads, 968-9; 69 Miss. 421 (22 L. R. A. 259, 13 So. 697); 35 Wash. 600 (77 Pac. 1058); 38 Kan. 375 (5 Am. St. R. 554, 16 Pac. 667); 92 Va. 627 (53 Am. St. R. 839, 32 L. R. A. 220, 24 S. E. 267); 217 Ill. 15 (75 N. E. 419); 44 Neb. 167 (48 Am. St. R. 717, 62 N. W. 447); 66 N. E. (N. Y.) 563. Liability of carrier not furnishing proper accommodations to passenger: 114 *Ga.* 159, 162; Civil Code, §2268 et seq. Proximate cause of injury: 116 *Ga.* 152. Contributory negligence of one entering a crowded car to become a passenger, a question for the jury: 217 Ill. 15 (75 N. E. 419); 50 Neb. 906 (70 N. W. 491); 97 Pa. St. 55; 87 N. Y. 63 (41 Am. R. 345); 38 Kan. 379 (16 Pac. 367); 52 Minn. 159 (53 N. W. 1071); 72 Wis. 307 (39 N. W. 866); 50 N. J. L. 438 (14 Atl. 883); 85 Mich. 12 (48 N. W. 199); 20 Wash. 466 (72 Am. St. R. 121, 43 L. R. A. 300, 55 Pac. 631); 48 Hun, 608 (1 N. Y. Supp. 267), s. c. 113 N. Y. 659 (21 N. E. 415); 144 Mass. 18. Punitive damages authorized by continued indifference to rights of passengers: 85 *Ga.* 495; 91 U. S. 489.

*Rosser & Brandon, Walter T. Colquitt,* for defendant, cited, on motion to dismiss: *Ga. R.* 120/899, and cit.; 121/561; 124/-1053; 125/759, 775. On alleged overcrowding of cars at other times: *Ga. R.* 87/204 (2), 332; 92/187 (3); 94/110 (3); 103/-333 (6); 107/73. Punitive damages: *Ga. R.* 119/148; 105/316; 101/263; 85/482. Allegation as to "crowded and dangerous positions," properly stricken, as a mere conclusion: *Ga. R.* 105/381 (2); 115/1009; 119/705 (2). No error in rejecting amendment containing matter included in amendment previously allowed: 116 *Ga.* 194 (1).

RUSSELL, J. The plaintiff brought an action against the Georgia Railway & Electric Company to recover damages for an injury which he alleged had been inflicted upon him by a sudden, violent jerk of the defendant company's street-car, by which the plaintiff in error was thrown violently to the floor and his ankle and instep were severely injured. Thereafter the plaintiff offered an amendment, in which he attempted to set up an additional ground of negligence and certain aggravating circumstances in the act by which he alleged he was injured. The defendant demurred to material portions of the amendment, and the demurrer was sustained. Thereafter, on October 22, 1906, the plaintiff offered a second amendment, which, upon objection thereto by defendant's counsel, the court refused to allow. The amendment which was tendered and rejected does not seem to have been objected to by special demurrer.

We think the court erred in refusing to allow the amendment offered by the plaintiff; for certainly, in so far as paragraphs 2, 3, 4, 5, 6, 7, and 10 are concerned, the stricken portions of the amendment which was filed, as well as the proffered amendment, set up, as a distinct act of negligence, the fact referred to in the original petition, but not then alleged to be negligent, namely, the overcrowding of the car and the failure to furnish the petitioner a seat. This fact, although an independent breach of public duty, could be alleged as negligence contributing to the injury, and did not set up a new cause of action. *Anglin's* case, 120 *Ga.* 785 (5), (48 S. E. 318).

Even if the amendment may be subject in some points to special demurrer, we think that it may be one of the duties of a common carrier, in the exercise of the extraordinary diligence imposed by law, to furnish its passengers with seats, and that such failure to furnish a seat may be alleged as negligence. It has been held in other jurisdictions that a carrier can not enforce payment of fare from a passenger who has not been provided with a seat; and that the carrier is not authorized to eject the passenger for non-payment of fare until a seat has been provided. It can not be said, as matter of law, that the carrier is exercising extraordinary care for the protection of a female passenger, or of a sick male passenger, who is compelled to stand; and even a strong man may be subjected to severe strain if compelled to stand in a

crowded car for a long distance. The increased danger of injury resulting from a sudden jerk, either in the starting or the stoppage of a car, would of course be undeniable. In Texas & Pacific Ry. Co. v. Rea, 27 Tex. Civ. App. 549 (65 S. W. 1117), it is held that "it is the duty of railway companies to provide their passengers with seats while on their trains, and the failure to do so is a breach of the contract of carriage, and subjects them to such damages as proximately result from such breach; but when the passenger can reasonably avoid the aggravation of the damage, it should be done." And in that case it was held that the wife could recover not only for personal injuries sustained as a passenger, arising from the crowded condition of the train and from being compelled to stand, but also was entitled to additional damages caused by being compelled to hold, while thus standing, a child in her arms.

If a common carrier does not fulfil its legal duties until it provides a seat for each passenger; and if, as alleged by petitioner, the crowded condition of the defendant company's cars at certain hours in the early morning and late in the afternoon had existed for years with the knowledge of the defendant, it might afford a circumstance of substance and of aggravation in a case where the injury resulted, or was caused partly, by reason of the fact that the injured party was less able to resist the motion of the car, and to protect himself from injury while standing, than he would have been had he been seated.    *Judgment reversed.*