## SOUTHERN RAILWAY COMPANY *v.* NAPPIER.

1. There was no error in overruling the demurrer to the petition as amended.
2. It is the general duty of a railroad company to furnish sufficient room within its cars for all passengers' whom it receives for transportation. Whether or not, on a particular occasion, the company was excused from the performance of this duty, by reason of some sudden emergency or unusual situation, which it could not have reasonably anticipated, and against which it could have provided by the use of due care, or whether it was negligent in failing to provide a passenger with proper accommodation inside a car, so that he was compelled to ride on the platform, and was thereby injured, was a question for the jury.

(*a*) The presiding judge submitted this question to the jury. Some of the requests to charge were not accurate statements of the law as applicable to the evidence, and others were substantially covered by the charge given.

3. If a carrier furnishes a passenger with a safe and sufficient place to ride in its cars, generally such place is the proper one for the passenger to occupy. If by reason of the crowded condition of the car, or other justifying cause, he is upon the platform instead of within the car, the question of his diligence or negligence is ordinarily one for the jury.

(*a*) In some cases the conduct of a passenger in leaving his seat in a car and going upon an open platform, while the train was running at a high speed, without legitimate reason therefor, has been so palpably negligent as to be dealt with as a matter of law.

4. Where suit was brought for an injury resulting to a passenger on a railroad train by being thrown therefrom while riding upon a platform of a car, because it was claimed that the car was so crowded that he

could not obtain entrance to it, and where it was contended that the company was negligent in not providing room for the passenger, thus causing the injury, there was no error in giving in charge the principle embodied in the Civil Code (1910), § 2780, as to the presumption of negligence arising against a railroad company if it is shown that a person is injured by the running of a train, or by acts of the employees of the company in connection therewith.

5. Where, in a suit for a personal injury to a passenger on a railroad train, resulting from his falling or being thrown from the platform of a car on which he was riding, the only act of negligence alleged was the failure to provide him with suitable accommodations inside the car, thus compelling him to ride on the platform, and there was no evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or of such entire want of care as would raise a presumption of conscious indifference to consequences, it was error to charge: "In every tort there may be aggravating circumstances, either in the act or in the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff."

(a) In a case of the character indicated in the preceding headnote the mere fact that a ticket taker, in passing from car to car, said with an oath; "Give me your tickets," was not sufficient to authorize such a charge.

6. Where, in a suit on account of a personal injury, damages were claimed for physician's bills, permanent injury resulting in loss of money, and pain and suffering, it was error to charge broadly: "In some torts the entire injury is to the peace, happiness, or feelings of the plaintiff. In such cases no measure of damages can be prescribed, except the enlightened conscience of impartial jurors."

7. Where the plaintiff alleged that at the time his ticket was taken up by the conductor, he requested the latter to furnish him with a place in the car, and the evidence showed no request of any agent for that purpose, the fact that the evidence disclosed that the tickets of passengers were taken up by an auditor or ticket agent did not alone constitute such a material variance as to prevent a recovery, if the plaintiff was otherwise entitled thereto.

8. Where the sole act of negligence alleged was a failure to provide a proper place for a passenger to ride in a car, thus causing him to ride on the platform, from which he was thrown by the swaying or motion of the train, and there was no allegation that such swaying or motion was in itself negligent, the presiding judge should have so instructed the jury on request.

9. After the conductor, as a witness for the defendant, had testified that he did not go out on the platform of the car and take up tickets from the plaintiff or others, and in fact did not take up any tickets on that train, there was no error in allowing him to testify, on cross-examination, that the auditor took up the tickets.

10. While in one or two other minor respects portions of the charge may have been subject to criticism, they were of such a character as require no detailed discussion, and they are not likely to occur again.

APRIL 10, 1912.

Action for damages.　Before Judge Daniel.　Butts superior court.　April 8, 1911.

Jesse I. Nappier brought suit for damages against the Southern Railway Company, alleging in substance as follows: On November 22, 1909, he was in the city of Jackson, Georgia. He purchased from the agent of the defendant at that place a ticket for the town of Jenkinsburg, a station on the line of the defendant. He entered safely upon the train of the defendant as far as the platform, and attempted to get on the inside of the car to a seat. While he was doing this, the train moved off on its regular schedule. He observed every precaution in riding on the outside of the passenger-coach, and tried to gain admission thereto, but could not get inside the car, on account of the crowd of people therein. The distance from the point where he boarded the train to the point of his destination was about five miles. While he was thus standing on the platform of the car, the conductor came to the plaintiff and others and asked for their tickets. When plaintiff delivered his ticket to the conductor, he at the same time demanded entrance to the car. The conductor accepted the ticket but "made no effort to get or allow petitioner to get inside the car to a seat and greater place of safety." While standing on the platform and endeavoring to take care of himself as best he could, and when within about a mile of the station where he expected to leave the train, he was violently thrown from the car by reason of his inability to longer hold on to the supports which he had grasped. By reason of the violent swaying and rocking of the car, and its crowded condition, he lost his hold and fell to the ground, causing him serious injury. He has endured much pain and suffering, and has been put to the expense of a physician's bill of $200. He was a healthy and vigorous man, 28 years of age at the time of the injury, and was earning $35 to $40 per month. He has been permanently injured and his earning capacity destroyed. The allegation as to the respect in which the defendant was negligent was as follows: "Your petitioner alleges that said railway company was careless, negligent, and failed to perform its duty to your petitioner, in that it, by and through its agents, the conductor of said train, its auditors, porters, and other employees of said company, failed, neglected, and absolutely refused to provide a place of safety on the inside of said car for your petitioner, after accepting the ticket for his passage to

the point of destination, which acts, neglect of duty, are here charged as cause of petitioner's injury.". The defendant demurred to the petition. An amendment was made amplifying an allegation in regard to the failure to furnish sufficient room in its cars. The demurrer was overruled, and exceptions pendente lite were filed.

The defendant denied the substantial allegations of the petition, and alleged that it exercised all due care and diligence, that the plaintiff himself was negligent, and that, if the·defendant was negligent, the plaintiff could have avoided the consequences thereof by the exercise of ordinary care and diligence. On the trial the jury found for the plaintiff $1,000. The defendant's motion for a new trial was overruled, and it excepted.

*Harris, & Harris,* for plaintiff in error.

*Y. A. Wright, J. T. Moore,* and *Moore & Branch,* contra.

LUMPKIN, J. (After stating the foregoing facts.) .

1. There was no error in overruling the demurrer to the petition as amended.

2. It is the general duty of a railroad company to furnish sufficient room within its cars for all passengers whom it receives for transportation. 2 Hutchinson on Carriers (3d ed.), § 1113. Similar to this is the rule that the carrier by the customary conveyances used in land travel is usually bound to furnish a passenger with a seat. This is sometimes declared by statute, sometimes held to arise from the contract of carriage. Civil Code (1910), § 2723; 1 Fetter, Carriers of Passengers, § 251. It has been declared that railroad companies can not refuse to carry those who apply to be carried, or those who entitle themselves to be carried by procuring tickets, because of the want of room. It is said that this is so because the trains may have additional coaches attached to them for the accommodation and carriage of as many as may apply. But it has also been said that this rule should not be enforced if the refusal to receive and carry was bona fide on account of some unexpected or extraordinary circumstances occasioning the necessity for taking on an unusual number of passengers, by which its coaches were filled before the person desiring to be carried had applied, under circumstances which made it impossible by the use of due care to remedy the inconvenience; as, where the carrier had made arrangements at starting to accommodate as many travelers

as might be reasonably expected to apply, and at a way station, where additional coaches could not be procured, an unusual and unexpected number of persons sought to board the train. 2 Hutchinson on Carriers (3d ed.), § 1114.

The present case does not involve a refusal to accept or carry the passenger, but a contention that the company received the plaintiff as a passenger and carried him, but did not provide for him room within the car. While the general rule of duty is as above stated, there may be circumstances which would excuse the carrier for a failure fully to comply therewith. Whether one who bought a ticket and applied for passage would be entitled to recover in a suit for breach of contract, if he were delayed by reason of a failure to furnish proper accommodation, is not now under consideration. He can not insist on riding free because the accommodations are not such as they should be. Generally the question of whether a railroad company is negligent, under the circumstances of the particular case, in not furnishing sufficient accommodations, is one for the jury. In this case the court submitted that question to the jury. Several of the grounds of the motion for a new trial complained of charges on the subject and refusals to charge as requested. While there may have been some ground for verbal criticism as to one or two of the charges, in the main the court submitted the question of diligence or negligence on the part of the defendant in the manner above indicated. Some of the requests to charge on this subject were themselves not perfectly correct statements of the law in connection with the evidence, and others were substantially covered by the charge given. The evidence on which the request contained in the nineteenth ground of the motion was based seems to have been only that the conductor on that train did not know that there was a crowd at Jackson; nor was there anything to show whether additional accommodations could have been provided. His evidence tended to show that all passengers were in fact in the car. If the request were accurately stated as a principle of law, it was not adjusted to the evidence. So, too, there was no error in refusing the request contained in the 22d ground of the motion. It ignored the general rule of duty on the part of the carrier to furnish accommodations, and sought to have it declared that a failure to provide a seat for a passenger was not of itself proof of negligence, and to

require superadded proof from the plaintiff. The court more correctly recognized the general rule, and left to the jury the question whether, under the peculiar facts of the case, in view of the situation, the number of persons applying for passage, and all the circumstances, the railroad company was negligent in this regard.

Apparently speaking of cases not controlled by statute, it is said in 2 Hutchinson on Carriers, § 1113: "But it is not negligent per se for a carrier to fail to furnish a passenger with a seat. Such a failure is only evidence of negligence to be weighed by the jury. There are circumstances under which a passenger might prefer to enter a car and stand up, rather than not make the journey. In such case it can not be said as a matter of law that the carrier is negligent in permitting him to exercise such privilege." See, in this connection, *Lyndon* v. *Georgia Ry. &c. Co.,* 3 *Ga. App.* 535 (60 S. E. 278).

3. Thus far we have dealt with the question of negligence on the part of the carrier. Another question which arises in such cases is as to whether the injured party is guilty of such negligence as to prevent a recovery. If a carrier furnishes a passenger with a safe and sufficient place in its cars, ordinarily such place is the proper one for the passenger to occupy. There have been cases in which the facts were so plain that it was held to be a lack of ordinary care, as matter of law, for a passenger to leave his seat in a car on an ordinary commercial railroad, and voluntarily and needlessly go out upon the platform or steps while the car was running at a high speed, and thereby receive an injury. *Patterson* v. *Central Railroad & Banking Co.,* 85 *Ga.* 653 (11 S. E. 872); *Blodgett* v. *Bartlett,* 50 *Ga.* 353. But there are other cases in which there was not room for a passenger inside of the car, or in which he went upon the platform under the direction of the conductor, or for some legitimate purpose. Save in cases of the character first above mentioned, especially if there is evidence tending to show a legitimate reason for the passenger to be on the platform, the question of his diligence or negligence is one for the jury. Here the plaintiff testified that he got upon the platform without knowing that the car was crowded, or that he could not enter it, and that the train was under way before he discovered the fact. After stating that the interior of the car is ordinarily the place provided for passengers to ride, in 3 Hutchinson on Carriers (3d

ed.), § 1198, it is said: "He is not required, however, to disregard
the usual courtesies of life in order to get an advantage over
other passengers in securing a place within the car. If, therefore,
the car should be so crowded that the passenger in the exercise of
reasonable prudence would be justified in concluding that he could
not get inside without unreasonably pushing or crowding his way,
he would be under no duty to attempt to enter, and it would not
be negligence for him, under such circumstances, to ride upon the
platform." In this case the court properly left it to the jury to de-
termine whether, under the circumstances, the plaintiff was guilty
of negligence which precluded a recovery.

4. Complaint was made that the court gave in charge the prin-
ciple of Civil Code (1910), § 2780, as to the presumption of neg-
ligence arising against a railroad company, if it is shown that a
person is injured by the running of the train, or by acts of the em-
ployees of the company in running the train. It was contended that
the plaintiff was not injured by the officers or agents of the de-
fendant in running its train, but that the injury was due to his
own negligence. There was evidence tending to show that he was
injured by being thrown from the train while it was in motion.
The principle of the code section above cited was applicable.
Whether or not this presumption was rebutted or overcome was
a different question. It was subject to be rebutted by evidence in-
troduced by the plaintiff or by the defendant. So likewise the
negligence of the plaintiff might be shown by testimony introduced
by him or by that introduced by the defendant. The court charged
on the subject of the negligence of the defendant and also that
of the plaintiff. There was no merit in any of the criticisms made
upon the charges on this subject.

5. The court charged · "In every tort there may be aggravating
circumstances, either in the act or in the intention, and in that
event the jury may give additional damages, either to deter the
wrong-doer from repeating the trespass, or as compensation for the
wounded feelings of the plaintiff." While this is a sound rule of
law in cases to which it applies (Civil Code (1910), § 4503), it
has been held that a charge in regard to punitive or exemplary
damages is not ordinarily applicable to a case of a mere negligent
tort. In *Southern Ry. Co.* v. *O'Bryan,* 119 *Ga.* 147 (45 S. E.
1000), it was held, that, "To justify the imposition of punitive or

exemplary damages, there must be evidence of willful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise a presumption of a conscious indifference to consequences." See also *Southern Ry. Co.* v. *Davis, 132 Ga.* 812 (65 S. E. 131). The case before us involves a negligent tort. The negligence alleged consisted in failing and refusing to provide a place of safety on the inside of the car for the plaintiff. It was alleged, that, on boarding the train, he attempted to enter the car, but was unable to do so, on account of the crowded condition; that while he was doing this the train moved off, and he exercised all due precaution in riding on the platform; but that by reason of the swaying and rocking of the car he was thrown to the ground. It was also alleged that he demanded entrance to the car of the conductor who took his ticket, but failed to obtain admission. There was no evidence of willfulness or wantonness in excluding him from the car. There was no evidence that the plaintiff requested the conductor to procure an entrance for him into the car, or that the conductor refused to do so; or that the remark quoted below was made in connection with such refusal, so as to be an aggravation of the tort by reason of the manner in which it was committed. The sole evidence on which any claim for punitive or exemplary damages could be asserted to rest was that the agent of the company taking up tickets came through the cars, and called out, "Give me your tickets, God damn it, give me your tickets." This remark was apparently not made to the plaintiff directly, but generally to the crowd. The case is not based on any insult by the company's agent to the passenger; nor was the language of the agent an aggravating circumstance of the negligence alleged—failing to furnish room in the car. Though profanity is neither commendable nor proper, this remark of the ticket taker was not sufficient to authorize a charge on the subject of exemplary or punitive damages, in a case resting upon the question of whether a railroad company was negligent in not supplying sufficient room in its cars; and such charge was erroneous.

6. The court charged: "In some torts the entire injury is to the peace, happiness, or feelings of the plaintiff. In such cases no measure of damages can be prescribed, except the enlightened conscience of impartial jurors." The plaintiff sued for physician's bills, permanent injury to his earning capacity, and pain and suf-

fering. The damages thus claimed are in part susceptible of proof, and the rule given in charge by the court was inapplicable, when applied to them as a whole. Of course, damages for pain and suffering can only be measured by the enlightened conscience of impartial jurors.

In another excerpt from the charge, to which exception was taken, the court again used the expression, "in accordance with their enlightened conscience, as fair and impartial jurors." In connection with its context, the presiding judge, in this instance, may have intended rather a warning to the jury to act fairly and impartially, than to make the enlightened conscience of impartial jurors the measure of special damages.

7. A request was made to charge to the effect that the plaintiff alleged that the conductor took up his ticket; that if the jury believed that the conductor did not take up the ticket of the plaintiff and do the acts alleged in the petition, but the ticket collector did them, if they were done at all, there would be a fatal variance between the allegata and probata, and the plaintiff could not recover on account thereof. There was no error in refusing this request. The only thing which the ticket collector, or auditor, was shown to have done was the taking of the ticket. The evidence did not show that he was asked to furnish a seat and failed and refused to do so. Had it appeared that there were two distinct agents of the defendant with different powers and duties, and that a demand was made by a passenger upon one of them, who had no authority to act upon it, when it was alleged that the demand was made upon the other, who did have authority to act in such matters, there might have been a material variance. But the mere fact that the plaintiff alleged the request to the conductor to furnish him a safe place in the car, at the time the latter took his ticket, and the evidence showed no such demand, and showed that an agent of the company, whom it designated as an auditor or ticket collector, took the plaintiff's ticket, would not constitute a fatal variance, on the ground that an agent of a different designation from that alleged received the ticket, so as to preclude a recovery, if the plaintiff was entitled thereto otherwise. Besides, if a railroad company, on a particular occasion, entrusts some of the ordinary functions of a conductor to another agent, it will not necessarily be a material variance that he is called the conductor in the plead-

ing relatively to the discharge of such functions. *Atlanta & West Point R. Co.* v. *Haralson,* 133 *Ga.* 231 (65 S. E. 437).

8. The court charged in general terms that if the plaintiff should recover, he must do so on the negligence alleged in his petition, and not on any other ground of negligence, if any should appear. There was no allegation of any unusual or negligent speed or jerk occurring in the operation of the train. The suit was based on the idea that the ordinary and normal swaying of the train, coupled with the negligence of compelling the plaintiff to ride on the platform, by reason of failing to furnish a safe place inside the car, caused him to fall or be thrown from the train. We think the court, on request, should have instructed the jury that there was no allegation of negligence as to the manner in which the train was run, other than in failing and refusing to furnish the plaintiff a place to ride inside of the car, and causing him to occupy a position of danger on the platform. As there was an allegation and evidence in support of it that the train swayed or rocked, the defendant was entitled, on request, to have a charge to the effect that such swaying or rocking was not alleged to be negligence in itself. The request was itself subject to criticism on the ground that it began with the statement, "I charge you that there is no allegation that there was any negligence in the running of the train." The words "the running of the train," might be broad enough to cover the entire operation of the train, thus including the question of whether sufficient cars were furnished, or whether the plaintiff was compelled to occupy a dangerous position, and might have been so understood by the jury, rather than as having the narrower meaning of the motion of the train. It also used "contended," when it probably meant alleged. But the court, on request, should charge the jury as to what was the negligence alleged, and to which they were confined. As the request was not free from possible criticism, perhaps its refusal would not require a reversal.

9. Where the conductor, as a witness for the defendant, testified that he did not go out on the platform and take up tickets from the plaintiff or others, and did not take up any tickets, there was no error in allowing him to testify, on cross-examination, that the auditor took up the tickets.

10. In one or two other respects of a minor character the

charge was subject to criticism. In one or two places the language was subject to the construction that if the defendant was negligent as alleged, and the plaintiff was not negligent, he could recover, without adding, provided the defendant's negligence was the proximate cause of the injury. In view of the argument which it appears was made to the jury as to a delay in taking up the tickets, it would have been better, on request, to have charged that there was no allegation that such delay was a substantive act of negligence. But these mere matters of detail will probably not occur again. Otherwise than as indicated above, the grounds of the motion for a new trial are not such as to cause a reversal, in the light of the evidence and the entire charge.

*Judgment reversed. All the Justices concur.*