## ROSSMAN *v.* GEORGIA RAILWAY & POWER COMPANY.

1. As a general rule, a carrier operating an interurban railway line is under a legal duty to furnish a passenger on its cars with a seat.   If one boards such a car with the intention to become a passenger, and refuses to pay his fare because from the crowded condition of the car he is unable to procure a seat, he can not insist on riding free while standing.   If he is unwilling to accept transportation unless provided with a seat, he must abandon the car if the carrier gives him a reasonable opportunity to leave it in safety.   If after a refusal to pay the fare because not provided with a seat, and after he has been afforded a reasonable opportunity to leave the car in safety, he refuses to leave the car, the conductor may eject him and use necessary force to accomplish his expulsion.

2. In accomplishing such ejection the carrier can not use more force than is necessary; and if in an action against the carrier the plaintiff ejected complains that he was "bruised" by the ejection, he must allege that the force used was unnecessary, or state the facts from which such an inference may be drawn.

3. An interurban railway carrier can not lawfully eject a person refusing to pay fare on account of not being provided with a seat, at an improper place or at a place where his ejection will be attended with peril or danger.   An allegation that the place where the ejection occurred was "many hundred feet from a regular stopping-place" does not charge that the ejection was at an improper place, or with unnecessary force.

DECEMBER 13, 1916.

Action for damages.   Before Judge Smith.   DeKalb superior court.   November 24, 1915.

*Lawton Nalley,* for plaintiff.

*Colquitt & Conyers,* for defendant.

EVANS, P. J.   In substance the plaintiff alleged the following: The defendant operates an interurban railway line between Atlanta and Stone Mountain.   Plaintiff with seventy-five or eighty other persons at Stone Mountain were awaiting the arrival of the cars from Atlanta, so that they could board them on their return trip.

When the cars reached Stone Mountain, the trailer-car which had been customarily operated over the defendant's line was detached, leaving only one car to be operated on the return trip. The plaintiff, with the other passengers, boarded this car, the plaintiff intending to ride as a passenger to the city of Atlanta. He was unable to obtain a seat, and refused, after the car had gone some distance, to pay the usual and customary fare demanded of him by the conductor. Upon his refusal to pay the fare the car was stopped, and the plaintiff was ejected at a point not at a regular stopping-place, in the presence of his friends and many strangers, and on this account he was "greatly humiliated in mind, body, and spirit;" he was "bruised and injured about his arms and body, caused by the manner and method in which he was ejected from the car." The circumstances attending his ejection from the car were not made to appear in the petition. His complaint is that the defendant was negligent, in that it failed to furnish him with reasonably safe and comfortable transportation from Stone Mountain to Atlanta, failed to furnish him with a seat and with a car in which he could have been seated, and ejected him from the car on which he was riding at a place not established as a regular stop for passengers to get on or off the defendant's cars; and in the manner of his ejection. His petition was dismissed on general demurrer, and he excepted.

If the passenger had provided himself with a ticket, the conductor could not have required him to surrender it until he had furnished him with a seat. But while a passenger may decline to surrender his ticket until he is furnished with a seat, he can not insist on riding free while standing. He can not avail himself of the benefit of the transportation offered him under his contract, and at the same time withhold from the carrier his ticket, which is the evidence of his having paid his fare. If a passenger with a ticket desires to repudiate his contract because of the carrier's failure to comply with a part of his obligation, he must do so in toto. He can not appropriate its benefits and at the same time get rid of its burdens. *Southern Railway Co. v. Nappier,* 138 *Ga.* 31 (74 S. E. 778); 2 Hutchinson on Carriers, § 1113. The principle of this rule also applies to intending passengers of interurban cars who board the car with the intention of paying the fare on the car. The plaintiff does not make it appear that the car had left

Stone Mountain before he discovered that he could not get a seat. If he made such discovery after he got on the car but before it was in motion, and, with full opportunity to leave it, nevertheless he remained on it, he will be deemed to have elected to take the accommodations furnished him; he could not refuse to pay fare and gratuitously complete his journey. If one who boards the car of an interurban railway company is unwilling to accept transportation unless furnished with a seat, he must abandon the car, and the carrier is bound to afford him a reasonable opportunity to leave it in safety. If after such refusal to pay fare because not provided with a seat, and after he has been afforded a reasonable opportunity to leave the car in safety, he refuses to leave the car, the conductor may eject him, and use necessary force to accomplish his expulsion.

Though a carrier may have the right to eject a passenger who refuses to pay fare, unnecessary force must not be used. The plaintiff alleged that he was "bruised and injured about his arms and body, caused by the manner and method in which he was ejected from the car." The only "manner and method" of ejection alleged is that the conductor stopped the car at a place many hundred feet away from a regular stop, and "after it was stopped petitioner was ejected therefrom." There is no allegation from which it can be deduced that unnecessary force was used. The plaintiff admits that he refused to pay fare and that the car was stopped so as to give him an opportunity to leave it. No complaint is made that he was not given time to leave the car. It was a part of his case to show that excessive force was used; he does not allege it. If the bruises on the arms and body were the result of his resistance of the conductor's effort to eject him, and the force used was not excessive, the carrier is not liable for such injuries. He complains that he was put off "many hundred feet from a regular stopping-place," but no complaint is made that the place was an improper one to alight from the car in safety. We do not understand the law to be that one who boards an interurban railway car to be transported as a passenger, and who refuses to pay his fare because not given a seat, has the right to demand that he be carried to the next regular stopping-place. When he refuses to accept the carrier's accommodation and the carrier gives him an opportunity to leave the car at a proper place in safety, he must leave the car; otherwise he may be lawfully ejected.

*Judgment affirmed. All the Justices concur.*